IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| SOLOMON HARGROVE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 121-174 |
| | ) | (Formerly CR 118-004) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

___

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
___

Petitioner, an inmate at the Federal Correctional Institution in Herlong, California, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss. (Doc. no. 3.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED**, (doc. no. 3), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.   BACKGROUND**

  **A.   Indictment**

On February 7, 2018, the grand jury in the Southern District of Georgia charged Petitioner with two counts of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1), on June 2 and 5, 2017. United States v. Hargrove, CR 118-004, doc. no. 3 (S.D. Ga. Feb. 7, 2018) (hereinafter "CR 118-004"). Both counts carried maximum sentences of twenty years

imprisonment.  Id., doc. no. 4.  Petitioner retained attorney Martin C. Puetz to represent him. Id., doc. no. 10.

### B.  Agreement to Plead Guilty

On October 25, 2018, Petitioner appeared with counsel and pled guilty to Count Two only.  CR 118-004, doc. nos. 48-50.  In exchange, the government agreed to dismiss Count One, not object to a two-point acceptance of responsibility reduction, and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.  Id., doc. no. 50, ("Plea Agreement"), p. 3.

Petitioner's Plea Agreement contained the following factual basis for his guilty plea:

> On or about June 5, 2017, in Richmond County, within the Southern District of Georgia, the defendant, SOLOMON HARGROVE a/k/a "SOLO," did knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance.

Id. at 1-2.

The Plea Agreement did not require Petitioner to waive any appellate or collateral-attack rights.  See Plea Agreement.  With his signature on the Plea Agreement, Petitioner agreed he read and carefully reviewed it with Mr. Puetz, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect."  Id. at 8.  Petitioner additionally attested "that his attorney has represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney."  Id. at 5.

At the change of plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly

understood where he was and why he was in court. Id., doc. no. 75 ("Rule 11 Tr."), p. 2. Judge Hall reviewed the charges against Petitioner in the indictment, with a particular focus on the Count Two to which the guilty plea applied, as well as the forfeiture allegation against him. Id. at 5-6. Petitioner confirmed he had as much time as he needed to review the charges with Mr. Puetz. Id. at 6. Petitioner also testified under oath he was satisfied with Mr. Puetz's assistance, and he had read and reviewed the Plea Agreement with counsel before signing it. Id. at 7, 9.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 7-9. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea. Id. at 10.

Judge Hall reviewed the statutory penalty of a sentence up to twenty years in prison. Id. at 11. When asked, Petitioner confirmed he understood the possible imprisonment penalty, as well as the potential $1,000,000 fine and up to three years of supervised release after completion of the term of imprisonment. Id. Judge Hall also explained that upon Petitioner's conviction, he would lose the right to vote, hold public office, serve on a jury, and own or possess firearms or ammunition. Id. at 12. Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI. Id. at 12-14. Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but

he could sentence Petitioner within the range, below the range, or above the range. Id. at 14. Petitioner stated he understood the sentencing process described by Judge Hall and no one had promised him he would receive a particular sentence. Id. at 15.

Next, Judge Hall heard a factual basis for the guilty plea from Assistant United States Attorney Tara M. Lyons Id. at 16-17. On June 1, 2017, Special Agent Ron Rhodes with the Bureau of Alcohol, Tobacco, and Firearms ("ATF") worked with a confidential informant to set up a drug purchase from Petitioner. Id. at 16. The confidential informant contacted Petitioner to purchase one half once of cocaine, and Petitioner told the informant to meet him at a Chevron parking lot in Augusta, Georgia. Id. Special Agent Rhodes and other ATF Agents observed Petitioner drive up in a Dodge Charger, exit the vehicle, enter the informant's vehicle, and hand the informant cocaine in exchange for $350. Id. The transaction was captured on video. Id. The cocaine was turned over to the ATF agents to be tested, and a database search matched the Dodge Charger's license plate to owner Lisa Hargrove. Petitioner stated to Judge Hall the information provided by AUSA Lyons and contained in Count Two of the indictment was true. Id. at 18.

Judge Hall summarized the proceedings as follows:

> Now that the plea has been signed by [Petitioner] and entered into the record of this hearing, this Court now finds that [Petitioner] is competent. He fully understands the charge against him. There is an independent factual basis to support his plea of guilty containing each of the essential elements of this offense. He knows the statutory punishment that could be imposed on the charge and he knows his jury rights which he has knowingly and voluntarily waived.
>
> I further find that [Petitioner]'s decision to plead guilty this morning is voluntary, knowing, and not as a result of any force, pressure, threats or promises other than the promises made by the Government in the Plea Agreement. Therefore, his plea is accepted and I now adjudge [Petitioner] guilty of count two of the indictment based upon the plea.

Id. at 19.

### C.     Sentencing

The United States Probation Office prepared a PSI setting Petitioner's Total Offense Level at twenty-nine, Criminal History Category at VI, and Guidelines imprisonment range at 151 to 188 months.  PSI ¶¶ 21, 37, 60.  Because Petitioner had two prior controlled substance convictions and was thus a career offender under U.S.S.G. § 4B1.1, his offense level was thirty-two, reduced by three for acceptance of responsibility.  PSI ¶¶ 18-21.  The statutory maximum term of imprisonment for Count One was twenty years.  21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C); PSI ¶ 59.

Petitioner raised one objection to the PSI, objecting to his career-offender status.  See PSI Add.  The PSI classified Petitioner as a career offender because he had two prior state court convictions for controlled substance offenses.  Specifically, in 2009 and 2010, Petitioner twice plead guilty in Richmond County Superior Court to possession of cocaine with intent to distribute.  PSI ¶¶ 18, 25, 28.  Petitioner averred his 2009 conviction only involved 3.3 grams of cocaine.  PSI Add., p. 1.  Petitioner argued the small quantity of cocaine involved in that conviction was grounds for a downward departure in Petitioner's sentence.  Id.  Petitioner also filed a separate motion for a downward departure making the same argument.  See CR 118-004, doc. no. 56.

At sentencing, Judge Hall noted that Petitioner filed both an objection to the PSI and a motion for a downward departure that was "tied into that objection."  Id., doc. no. 76 ("Sent. Tr."), p. 3.  Mr. Puetz agreed that the PSI objection and motion for a downward departure were both based on the amount of cocaine involved in the 2009 conviction that led to Petitioner's career offender classification.  Id.  Mr. Puetz further agreed his dispute with the PSI was not

whether the 2009 conviction merited the career offender classification, but whether the underlying facts merited a downward departure. Id. at 3-4. Accordingly, Judge Hall overruled Petitioner's objection to the PSI and stated he would take into consideration the basis of the PSI objection when considering the motion for a downward departure. Id. at 4. Judge Hall then adopted the factual statement of the PSI and the application of the advisory Guidelines as his own findings of fact. Id. at 4-5.

Judge Hall next heard from Mr. Puetz and Petitioner regarding mitigation. Mr. Puetz explained the facts leading to Petitioner's prior state court convictions for possession with intent to distribute, emphasizing the small amounts of cocaine involved in the 2009 conviction and the weak evidence supporting the 2010 conviction. Id. at 8. Mr. Puetz noted Petitioner obtained a GED certificate in jail, had a supportive family who appeared at the sentencing, had two young children, disliked firearms, and did not have a firearm when he was arrested. Id. at 9-10, 12. Mr. Puetz read a letter written by Petitioner, where Petitioner expressed remorse, took responsibility for his actions, and promised to live a clean and sober life. Id. at 10-11. Mr. Puetz closed by asking the Court to "depart downward significantly from that career offender level 32." Id. at 13.

Judge Hall denied the motion for a downward departure and imposed an imprisonment term of 152 months, which is at the bottom of the Guidelines range. Id. at 18; id., doc. nos. 58-59. Petitioner filed an appeal which was ultimately dismissed at Petitioner's request. See id., doc. nos. 63, 80.

### D. § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

 (1) Counsel provided ineffective assistance in the pretrial phase of the case when he failed to inform Petitioner of his right to collaterally attack his 2010 state court conviction prior to the guilty plea and sentencing.

 (2) Counsel provided ineffective assistance in the pretrial phase of the case when he failed to inform Petitioner of his right to collaterally attack his 2009 state court conviction prior to the guilty plea and sentencing.

 (3) Counsel provided ineffective assistance in the sentencing phase of the case when he failed to move for a downward departure in light of Petitioner's prior head injury.

 (4) Counsel provided ineffective assistance in the pretrial phase of the case when he failed to move to dismiss the indictment due to (a) selective prosecution based on race and (b) entrapment.

(See generally doc. no. 1.)

## II. DISCUSSION

### A. Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that

are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly

8

harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989). Furthermore, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), *cert. denied*, 568 U.S. 966 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

B.  **Petitioner Is Not Entitled to Relief on the Pretrial Ineffective Assistance Claims in Grounds One, Two, and Four.**

Petitioner asserts Mr. Puetz provided ineffective assistance in the pretrial phase of the case when he failed to (1) inform Petitioner of his right to collaterally attack his state court convictions that designated him a career offender and (2) move to dismiss the indictment due to government misconduct. These claims are barred by entry of a valid guilty plea, and in any event are devoid of merit.

1.  **Entry of a Knowing and Voluntary Guilty Plea Bars Petitioner's Claims in Grounds One, Two, and Four**

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). Because Petitioner does not challenge the knowing, voluntary nature of his plea, Petitioner has waived all non-jurisdictional challenges to his conviction. See id.; U.S. v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003). However, in abundance of caution, the Court will still analyze Petitioner's guilty plea.

In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be

10

involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Hall informed Petitioner in clear terms of the charges to which he was pleading guilty, and Petitioner testified he understood the charges. Rule 11 Tr., pp. 5-6. Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 7-9. Petitioner testified that other than the promises the government made in the Plea Agreement, no one made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Id. at 2, 10, 19.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction. In particular, Judge Hall explained the maximum twenty-year prison term for conviction of distribution of a controlled substance. Id. at 10-11. Finally, Petitioner also testified he had enough time to discuss the case with Mr. Puetz and was satisfied with his services. Id. at 6-7; see also Plea Agreement, p. 5 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney); id. at 8 ("I have read and carefully reviewed this agreement with my attorney.").

Thus, Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charges and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not argued, let alone shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea. See Dominguez Benitez, 542 U.S. at 83. As Petitioner's plea was knowing and voluntary, his claims in Grounds One, Two, and Four are barred.

### 2. Even if the Claims Were Not Barred by Entry of a Valid Guilty Plea, the Claims Are Without Merit

#### a. Grounds One and Two

In Grounds One and Two, Petitioner claims ineffective assistance of counsel based on Counsel's failure to inform Petitioner that he could avoid a career offender classification by collaterally attacking his two prior state court convictions for possession of cocaine with intent to distribute. (Doc. no. 1, pp. 4-5.) Petitioner argues he is "factually and actually innocent" of the 2009 and 2010 convictions, and he could have made such a showing to the Superior

12

Court of Richmond County before entry of the plea. Id. That would have resulted in his state court convictions being vacated, and a lesser sentence for his current federal court conviction. Id.

Petitioner's claim is without merit. First, Petitioner could not have used his federal proceeding to collaterally attack his 2009 and 2010 state court convictions. See Senter v. United States, 983 F.3d 1289, 1293 (11th Cir. 2020) (explaining general "prohibition against attacking state court convictions through federal proceedings") *cert. denied*, 142 S. Ct. 370, 211 L. Ed. 2d 196 (2021). A defendant may only challenge the validity of a state court conviction during federal proceedings if the conviction is "presumptively void," meaning it was obtained in violation of defendant's right to counsel. Id.; United States v. Roman, 989 F.2d 1117, 1120 (11th Cir. 1993). Petitioner, who was represented by counsel in both his state court convictions, claims he would have attacked his 2009 and 2010 convictions on the basis of actual innocence. Petitioner has therefore not established the convictions are "presumptively void" such that he should somehow be excused from first raising his challenge in state court. Thus, the proper avenue for challenging his state convictions prior to his guilty plea would have been through the state habeas process. Roman, 989 F.2d at 1120. Any attempt by counsel to collaterally attack the convictions through the federal proceedings would have been futile. See Owen v. Sec'y for Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) (holding that if, issues are without merit, "any deficiencies of counsel in failing to raise or adequately pursue them cannot constitute ineffective assistance of counsel.")

Second, if Petitioner's argument is then that counsel should have informed Petitioner of the potential benefits of the state habeas process on federal sentencing, Georgia law requires a defendant to file a writ of habeas corpus within four years of the challenged state felony

conviction. O.C.G.A. § 9-14-42(c). By the time Mr. Puetz was retained, the 2010 conviction was almost eight years old, and the 2009 conviction was nine years old. See CR 118-004, doc. no. 16-3. Petitioner has made no showing he could have nonetheless filed a habeas petition in state court, let alone that such a petition would have been successful by the time of sentencing, if at all. For these reasons, any failure by counsel to advise Petitioner to file habeas petitions in state court was neither ineffective assistance nor prejudicial.

### b. Ground Four

In Ground Four, Petitioner argues counsel should have filed a motion to dismiss the indictment due to government misconduct. Specifically, Petitioner claims the government entrapped him and selectively prosecuted him. Counsel was not ineffective for deciding not to pursue a motion to dismiss because, based on the information alleged by Petitioner, the motion was destined to fail. For the same reason, there can be no prejudice.

Entrapment is an affirmative defense with two elements: "(1) the government's inducement of the crime; and (2) the defendant's lack of predisposition to commit the crime before the inducement." United States v. Pisa, 701 F. App'x 781, 784 (11th Cir. 2017). However, "entrapment is not an appropriate issue to consider in a pre-trial motion to dismiss the indictment." See, e.g., United States v. McGill, No. 1:14-CR-167-WSD, 2014 WL 4829303, at *5 (N.D. Ga. Sept. 29, 2014), aff'd, 634 F. App'x 234 (11th Cir. 2015) (*per curiam*). Such a motion would have failed.

Petitioner's selective prosecution argument is similarly meritless. In order to prove a claim of selective prosecution, Defendant bears a heavy burden of showing: (1) he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted, and (2) the government's selective prosecution of him has been

14

constitutionally invidious.  United States v. Jones, 52 F.3d 924, 927 (11th Cir. 1995) (internal citation and quotation marks omitted).  A court must presume a prosecutor has not selectively prosecuted a defendant, and "in order to overcome that presumption, a defendant must present clear evidence of a selective prosecution."  United States v. Brantley, 803 F.3d 1265, 1271 (11th Cir. 2015).  Petitioner merely states there are "statistical factors demonstrating that non-African-Americans who possess similar quantities of cocaine . . . are not federally prosecuted," and presents no evidence that the prosecution in his case engaged in selective prosecution in violation of the Constitution.  (Doc. no. 1, p. 8.)

For these reasons, Petitioner's Ground Four fails on the merits even if it was not barred, which, as explained above, it is.

### C. Petitioner Is Not Entitled to Relief on the Sentencing Ineffective Assistance Claims in Ground Three

For Ground Three, Petitioner asserts Mr. Puetz provided ineffective assistance at sentencing when he failed to "motion the sentencing court for a downward departure . . . in light of [Petitioner's] prior head injury which hindered [Petitioner's] ability to maintain consistent employment, and which attributed to [Petitioner's] upbringing and unlawful decisions."  (Doc. no. 1, p. 7.)  Petitioner is referring to a head injury he sustained in 2004 or 2005 that causes him frequent migraines, as documented in the PSI.  See PSI ¶ 46.  Petitioner claims he was treated for the head injury at Augusta University, but the Probation Office did not receive any records regarding Petitioner's treatment from Augusta University when requested.  Id.

The Court finds counsel's failure to motion for a downward departure on the basis of Petitioner's head injury and resultant medical issues does not constitute ineffective assistance

of counsel. The head injury was documented in the PSI, along with several other mitigating factors that Petitioner and counsel presented in depth at sentencing. Counsel read a letter from Petitioner to the Court, addressed Petitioner's personal history and circumstances, and "begg[ed]" the Court for a downward departure based on the facts underlying Petitioner's prior convictions. Id. at 15. After hearing Respondent's arguments in opposition to a downward departure, counsel responded with further arguments in support of a lesser sentence. See id. at 17-18.

When he issued the sentence, Judge Hall clearly stated he considered counsel's arguments as well as the PSI, which contained information concerning Petitioner's head injury. Id. at 18. A specific motion regarding Petitioner's head injury would have been cumulative of what was already before the Court. Counsel cannot be ineffective for failure to present cumulative mitigation evidence. Ledford v. Warden, Georgia Diagnostic & Classification Prison, 818 F.3d 600, 649 (11th Cir. 2016); see Raheem v. GDCP Warden, 995 F.3d 895, 926 (11th Cir. 2021) (evidence of brain damage would have been cumulative in mitigation), *cert. denied sub nom.* Raheem v. Ford, 142 S. Ct. 1234 (2022); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1327 (11th Cir. 2013) (evidence of brain injury would have worked against defendant in mitigation).

For these reasons, Ground Three fails to allege ineffective assistance of counsel. Furthermore, there is no prejudice because it is highly unlikely Judge Hall would have imposed a lesser sentence had counsel reiterated the head injury facts in a motion.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 3), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED AND RECOMMENDED this 8th day of April, 2022, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA